UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| DIRTY DUDDS CLEANERS, LLC, § <br> § <br> *Plaintiff*, § <br> § <br> v. § <br> § <br> CCA OF TENNESSEE, LLC N/K/A CORE § <br> CIVIC OF TENNESSEE, LLC, § <br> § <br> *Defendant*. § | Civil Action No. SA-16-CV-1227-XR |

# ORDER

On this date, the Court considered the status of the above-captioned case. After careful consideration, the Court hereby GRANTS Defendant's Motion for Summary Judgment. Docket no. 26.

# BACKGROUND

## I. Factual Background

Plaintiff Dirty Dudds Cleaners, LLC filed its Original Complaint on December 20, 2016, Docket no. 1, and filed its Amended Complaint on December 30, 2016. Docket no. 4. Plaintiff named as Defendant CCA of Tennessee, LLC n/k/a Core Civic of Tennessee, LLC, bringing claims for breach of contract and common law fraud arising out of an agreement to perform laundry services.

Plaintiff is in the laundry-cleaning business and does personal and commercial laundry. *Id.* at 2. In November 2014, Defendant retained Plaintiff to do the laundry work for 450 individuals housed at the South Texas Family Residential Center ("the Facility") in Dilley, Texas. *Id.* at 3. Subsequently, the parties discussed entering into a formal contract for the laundry

1

service, and on July 1, 2015, the parties entered into a contract, which was titled "AGREEMENT BETWEEN DIRTY DUDDS CLEANERS AND CCA OF TENNESSEE, LLC" ("the Agreement"). Docket nos. 4 at 4; 27-2 at 5. Thereafter, the parties operated pursuant to and under the Agreement. Docket nos. 4 at 5; 26 at 2.

In relevant part, the Agreement states:

II.   AMOUNT OF LINEN AND RESIDENT CLOTHING PROVIDED

a. [Defendant] will provide a minimum of 2000 pounds of Linen and Resident Clothing per pick up by [Plaintiff], on an as-needed, will-call basis, subject to availability of [Plaintiff] staff.

. . .

III.   TERM

a. This Agreement shall be effective as of July 1, 2015 and shall continue in effect until terminated as provided herein below.

b. This Agreement may be terminated upon thirty (30) days written notice by either Party, for convenience. This Agreement may be terminated for cause upon written notice in the event of a material breach of either party. In the event of [Defendant's] contract to provide management services for the Facility terminates, this Agreement will terminate simultaneously. Time is of the essence in the performance of this Agreement.

. . .

V.   STATUS OF THE CONTRACTOR

a. [Plaintiff] is an independent contractor performing commercial laundry services for [Defendant]. Services shall be limited to the above-described services.

b. [Plaintiff] agrees not to purport to bind [Defendant] to any obligation not assumed herein by [Defendant] unless [Plaintiff] has express written authority to do so, and then only within the strict limitations of that authority.

. . .

XVI. SCOPE OF AGREEMENT

This Agreement incorporates all agreements, covenants, and understandings between the parties hereto concerning the subject matter thereof. No prior agreement or understanding, verbal or otherwise, of the parties or their agents shall be valid or enforceable unless embodied in this Agreement.

Docket no. 27-2 at 5–11.

Plaintiff alleges that, prior to July 1, 2015, it made three visits each week to the Facility to pick up items to be laundered, and on each visit, picked up approximately 4,050 pounds of laundry. Docket no. 4 at 5. Plaintiff states that, at that time, the Facility was not at full capacity, but only had 450 individuals, and that number eventually increased to 2,400 individuals. *Id.* After the Agreement went into effect, however, Plaintiff alleges that its manager Diane Rosow asked Defendant when it would use Plaintiff to provide the necessary laundry service, as it had before, and that Defendant responded that it would call or email Rosow. *Id.*

Plaintiff alleges that, after July 1, 2015, Rosow received numerous telephone calls from Defendant's employees asking when Plaintiff was "going to come by the Facility to pick-up the laundry because they were very behind, and needed Plaintiff's assistance, and that they (Defendant's employees) did not have the proper equipment to do the required laundry work there at the Facility." *Id.* Plaintiff alleges that it allowed Defendant to use twenty-seven of its carts to place clean laundry in for transportation, and Plaintiff permanently left three of its carts at the Facility for Defendant to use. *Id.* at 5–6. Plaintiff alleges it left these carts even when Defendant did not utilize its laundry services. *Id.* at 6.

Plaintiff alleges that because it signed the Agreement, "and knowing the amount of work the Facility demanded, Plaintiff did not seek and refused to take on additional work with other clients/ customers because Plaintiff did not want to breach the Agreement by not being able to perform its obligations under the Agreement." *Id.* Plaintiff alleges that although it regularly

provided laundry services prior to the formal Agreement, after July 1, 2015, "Defendant did not utilize Plaintiff at least once to provide any laundry service at the Facility especially when the number of individuals . . . increased to 2,400- because pursuant to the Agreement, Defendant would only utilize Plaintiff 'on an as-needed, will call basis.'" *Id.* Plaintiff alleges that after entering the Agreement, Defendant purchased new clothes, and either threw away or donated the used clothing, instead of using laundry services. *Id.*

## II. Procedural History

Plaintiff brings a claim for breach of contract against Defendant. *Id.* at 7. Plaintiff alleges that it fully performed and/or was prepared and able to perform its contractual obligations, that Defendant breached the contract "by failing and refusing to contract and utilize Plaintiff to provide laundry service at the Facility," and that the breach caused Plaintiff injury. *Id.*

Defendant states that, on August 16, 2016, it sent a letter via certified mail and electronic mail to Plaintiff, and to Plaintiff's attorney via electronic mail, that stated its thirty-day written notice to terminate the Agreement effective September 16, 2016, in accordance with Section III (b) of the Agreement. Docket no. 26 at 3. Defendant alleges that this letter provided "timely and proper notice of Defendant's termination of the contract, pursuant to Section III" of the Agreement. *Id.* Defendant further argues that the Agreement did not require Defendant to guarantee Plaintiff a minimum amount of work. Docket no. 31 at 2.

Plaintiff also brings a claim for common law fraud. *Id.* Plaintiff alleges Defendant "had misrepresented its intentions and committed fraud when Plaintiff received by email a letter dated August 16, 2016 signed by [Defendant's Assistant General Counsel] Ms. Jean Shuttleworth advising Plaintiff that Defendant was terminating the Agreement pursuant to Section III (b) of the Agreement." Docket no. 4 at 7. Plaintiff alleges that Defendant represented it would use

4

Plaintiff's laundry services as it did prior to the Agreement, "with the only changes being in the number of pick-ups per week and the amount of pounds from 4,050 to 2,000 pounds minimum." *Id.* at 8.

Plaintiff alleges Defendant's misrepresentation was material because Plaintiff relied on that representation when it entered into and signed the Agreement "and made itself exclusively available to the Defendant and did not seek additional work from other customers." *Id.* Plaintiff alleges Defendant's representation was a false promise of future performance that Defendant would continue to use Plaintiff's laundry service as it had prior to the Agreement. *Id.* Plaintiff alleges that Defendant made the false representation knowing that it was false and that Defendant had reason to expect that Plaintiff would act in reliance upon it. *Id.* Plaintiff alleges that it justifiably relied on the misrepresentation and suffered injury as a consequence. *Id.*

Defendant states that no language in the Agreement required Plaintiff to be "ready at a moment's notice" or guaranteed any volume of laundry. Docket no. 26 at 3. Defendant also states that the Agreement did not preclude Plaintiff "from securing work with any other businesses at any time, and Plaintiff's obligations under the [Agreement] were subject to availability of Plaintiff's staff." *Id.*

On November 27, 2017, Defendant filed its Motion for Summary Judgment, now pending before the Court. Docket no. 26. Plaintiff filed its Response on December 29, 2017, Docket no. 30, and Defendant filed its Reply on January 5, 2018. Docket no. 31.

## ANALYSIS

### I. Legal Standard

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R.

CIV. P. 56(a). To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the non-moving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the non-movant's claim or defense. *Lavespere v. Niagra Machine & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990), *cert. denied*, 510 U.S. 859 (1993). Once the movant carries its initial burden, the burden shifts to the non-movant to show that summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991).

In order for a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the non-movant, or, in other words, that the evidence favoring the non-movant is insufficient to enable a reasonable jury to return a verdict for the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.4 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the non-movant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).

**II.    Application**

Defendant moves for summary judgment, arguing that Plaintiff cannot show that Defendant breached the Agreement with Plaintiff and that Plaintiff cannot show that Defendant carried out any act that amounted to common law fraud.

**A. Breach of Contract**

Defendant argues that it is undisputed that the parties entered into a valid and enforceable contract, that Defendant never breached the Agreement, and that Defendant exercised its contractual right to terminate the Agreement without cause. Plaintiff acknowledges that Defendant had the right to terminate the Agreement upon thirty days written notice to the other party, but Plaintiff argues that Defendant breached the Agreement because it never used Plaintiff's services after the Agreement went into effect.

Under Texas law, to state a claim for breach of contract, a plaintiff must allege (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Smith Int'l, Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, LLC*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.)).

To determine if summary judgment is proper based upon a contract, a court must first determine whether the contract is ambiguous. *Hussong v. Schwan's Sales Enters., Inc.*, 896 S.W.2d 320, 324 (Tex. App.—Houston [1st Dist.] 1995, no writ). "When a court concludes that contract language can be given a certain or definite meaning, then the language is not ambiguous, and the court is obligated to interpret the contract as a matter of law." *DeWitt Cty. Elec. Co-op., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999).

It is unambiguous from the language of the Agreement that Defendant would only use Plaintiff's services on an as-needed, will-call basis, subject to availability of Plaintiff's staff. Section II (a) of the Agreement states: "[Defendant] will provide a minimum of 2000 pounds of Linen and Resident Clothing per pick up by [Plaintiff], on an as-needed, will-call basis, subject

to availability of [Plaintiff] staff." Although the provision states that there will be a minimum amount of laundry provided per pick up, the Agreement certainly and definitely indicates that such a pick-up will only occur on an "as-needed, will-call basis," which is further subject to "availability of [Plaintiff] staff." The Agreement does not mandate that Defendant must use Plaintiff's services for a minimum amount of pick-ups; it only mandates the minimum weight of linen and clothing if such a pick-up is requested by Defendant.

Plaintiff argues that because Defendant used Plaintiff's services prior to the Agreement, and because evidence shows that the number of individuals at the Facility increased after the parties entered the Agreement, Defendant breached the contract by never using Plaintiff's services. "Language should be given its plain grammatical meaning unless it definitely appears that the intention of the parties would thereby be defeated." *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 529 (Tex. 1987). Here, there is no clear indication that the parties intended for Defendant to request Plaintiff's services a minimum number of times. Although Defendant used Plaintiff's services prior to the Agreement, and the parties operated under a verbal agreement that included a guaranteed volume of laundry for servicing by Plaintiff, the parties show no clear intention in the Agreement that Defendant will use Plaintiff's services a minimum number of times. Further, the Agreement specifically states that: "This Agreement incorporates all agreements, covenants, and understandings between the parties hereto concerning the subject matter thereof. No prior agreement or understanding, verbal or otherwise, of the parties or their agents shall be valid or enforceable unless embodied in this Agreement." The parties certainly and definitely expressed their intent to not be bound by any agreement or understanding made prior to the Agreement, including the verbal agreement that included a guaranteed volume of laundry to be serviced by Plaintiff.

Plaintiff also argues extensively about Defendant's claim that its own primary laundry department was able to accommodate the needs of individuals at the Facility. Plaintiff argues that there was at least some period of time during which Defendant's own laundry department was unable to accommodate the Facility's needs, and thus, there was a need for Plaintiff's laundry services. Plaintiff further argues that Defendant's own employees did not have the necessary certifications to work in its laundry department. However, these facts, even taken as true, fail to demonstrate that the parties intended for Defendant to use Plaintiff's services a minimum number of times. Plaintiff's belief that its services were needed is irrelevant. Plaintiff even acknowledges that when Defendant was asked why it did not call Plaintiff for laundry services after the Agreement was executed, Defendant responded that it only would contact Plaintiff to provided services on an as-needed basis, and because Plaintiff's services were not needed, Defendant did not contact Plaintiff. Docket no. 30 at 6.

The Agreement did not mandate that Defendant must allow Plaintiff to launder any and all of its linen and clothing, nor did it prohibit Defendant from performing its own laundry services or require Defendant to account to Plaintiff for any lack of need related to laundry services. The Agreement certainly and definitely states that Defendant would only use Plaintiff's services on an as-needed, will-call basis that would be subject to Plaintiff's availability, and if a pick-up was scheduled, Defendant would provide a minimum of 2,000 pounds of linen and clothing per pick-up. Plaintiff fails to show that Defendant breached the contract by not using Plaintiff's laundry services after the Agreement went into effect. Accordingly, there is no genuine dispute of material fact as to whether Defendant breached the contract.

### B. Common Law Fraud

Defendant argues that Plaintiff's common law fraud claim is without merit. Plaintiff argues that the evidence shows that Defendant committed fraud by not utilizing Plaintiff's laundering services at the Facility.

A fraud cause of action requires "a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury." *Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998). Although a promise of future performance "constitutes an actionable misrepresentation if the promise was made with no intention of performing at the time it was made," "the mere failure to perform a contract is not evidence of fraud." *Id.* at 48. A plaintiff must present evidence that the defendant "made representations with the intent to deceive and with no intention of performing as represented" and the "evidence presented must be relevant to [the defendant's] intent at the time the representation was made." *Id.*

Plaintiff argues that Defendant made a false representation that it would use Plaintiff's laundry services "on an as-needed, will-call basis, subject to availability of [Plaintiff] staff." Plaintiff argues that it was clear to Plaintiff that its services were needed given the history of providing Defendant with laundry services prior to the Agreement and the fact that the number of residents at the Facility increased after the parties entered into the Agreement. Docket no. 30 at 9–10. Given these facts, and because Defendant did not utilize Plaintiff's services after they entered into the Agreement, Plaintiff argues that "[i]t is evident that at the time that Defendant made the above false representation and executed the Agreement, it had no intention of 'future performance' namely, utilizing Plaintiff's services at the Facility." *Id.* at 10. Plaintiff argues that

Defendant relied on this false representation in executing the Agreement, which caused Plaintiff to suffer damages. *Id.*

Plaintiff presents no evidence that Defendant made a promise of future performance with no intention of performing at the time that promise was made. As discussed above, the Agreement does not require Defendant to use Plaintiff for a minimum amount of laundry services. Plaintiff does not, and cannot, present evidence that Defendant required Plaintiff to be "ready at a moment's notice" or guaranteed any minimum volume of laundry to Plaintiff. Plaintiff, thus, can present no evidence that Defendant made any such promise without the intention of performing it. Additionally, Plaintiff presents no evidence that when Defendant promised to provide a minimum of 2,000 pounds of linen and clothing per pick up—with such a pick-up only on an as-needed, will-call basis and subject to Plaintiff staff's availability—that Defendant made that promise without the intention of performing it. As stated above, Defendant reiterated the same terms of the promise when Plaintiff called to inquire about the use of its services. Further, Plaintiff's arguments about the increase in the number of residents at the Facility and how Defendant used and staffed its own laundry department do not show that Defendant made a promise of future performance with no intention of performing it at the time the promise was made. Defendant promised to use Plaintiff's services on an as-needed basis. Defendant told Plaintiff that its services were not needed. Plaintiff presents no evidence of Defendant's intent to deceive. Accordingly, there is no genuine dispute of material fact as to whether Defendant committed fraud.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Docket no. 26) is GRANTED. Plaintiff's claims are hereby DISMISSED WITH PREJUDICE. The Clerk is

directed to issue a Judgment in favor of Defendant, and that Plaintiff takes nothing on its claims. Defendant may submit its Bill of Costs within 14 days in the form directed by the Clerk should it desire to pursue these costs.

It is so ORDERED.

SIGNED this 16th day of January, 2018.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE